IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

AMANDA LYNN T.,

                          Plaintiff,

            v.                                              Civil Action No.
                                                            6:19-CV-1046 (DEP)

ANDREW M. SAUL, Commissioner of the
Social Security Administration,

                          Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

PETER M. HOBAICA LAW OFFICE       B. BROOKS BENSON, ESQ.
2045 Genesee Street
Utica, NY 13501

FOR DEFENDANT:

HON. ANTOINETTE L. BACON          REBECCA ESTELLE, ESQ.
United States Attorney for the     Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Acting Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), are cross-motions for judgment on the pleadings.[1]  Oral argument was conducted in connection with those motions on September 9, 2020, during a telephone conference, held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

---

[1]      This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1)      Plaintiff's motion for judgment on the pleadings is GRANTED.

2)      The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3)      The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4)      The clerk is directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:   September 10, 2020
         Syracuse, New York

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------x
AMANDA LYNN T.,

                         Plaintiff,

vs.                                   6:19-CV-1046

ANDREW M. SAUL, COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,


                         Defendant.
--------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on September 9, 2020, the

HONORABLE DAVID E. PEEBLES, United States Magistrate

Judge, Presiding.

                A P P E A R A N C E S

                   (By Telephone)

For Plaintiff:      OFFICE OF PETER M. HOBAICA, LLC
                    Attorneys at Law
                    2045 Genesee Street
                    Utica, New York  13501
                      BY:  B. BROOKS BENSON, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of Regional General Counsel
                    Region II
                    26 Federal Plaza – Room 3904
                    New York, New York  10278
                      BY:  REBECCA ESTELLE, ESQ.


                *Jodi L. Hibbard, RPR, CSR, CRR*
            *Official United States Court Reporter*
                   *100 South Clinton Street*
                 *Syracuse, New York  13261-7367*
                      *(315) 234-8547*

1          (The Court and all counsel present by

2          telephone.)

3          THE COURT:  Let me begin by thanking both counsel

4    for excellent presentations, both in writing and verbally

5    today.

6          I have before me a challenge by the plaintiff to a

7    final determination of the Commissioner of Social Security

8    pursuant to 42 United States Code Sections 405(g) and

9    1383(c)(3).

10          The background is as follows:  Plaintiff was born

11   in October of 1980, she is currently 39 years of age.

12   Plaintiff was 35 years old at the alleged onset of her

13   disability in September of 2016.  At various points in the

14   record, plaintiff's height is measured at five foot

15   five-and-a-half inches up to five foot eight inches, and she

16   weighs anywhere between 180 and 369 pounds -- I'm sorry,

17   218 pounds.  It was noted at page 369 of the administrative

18   transcript that she'd lost at one point 70 pounds, so her

19   weight has been variable.  Plaintiff has a four-year college

20   degree.  She holds a bachelor of arts in case management.

21   She also apparently was in special education when she was in

22   high school in the 11th grade, receiving additional

23   assistance for reading comprehension.  Plaintiff is

24   right-handed.  Plaintiff drives.  She testified she cannot

25   use public transportation due to panic attacks.  Plaintiff

1   was living with a boyfriend but in June of 2018, apparently

2   moved in with her family and now lives with her parents, a

3   grandfather, and a son.  She also has joint custody of her

4   son who is nine years old.  Although she now apparently has

5   sole custody because her ex-husband is in prison.  Plaintiff

6   is not married.  She stopped working in 2008, apparently when

7   she went to jail.  Her prior positions include as a movie

8   cashier, a social agency caseworker, she worked at the

9   Upstate Cerebral Palsy Association where she was let go, she

10  worked as a waitress, and she worked as a certified nursing

11  assistant at the Masonic Nursing Home in Utica, New York.

12  She also tried volunteering in 2009 and 2010.

13          Plaintiff suffers from various physical impairments

14  including obesity, degenerative disk disease of the lumbar

15  spine, neuropathy.  Her neuropathy affects her feet and

16  fingers as well as legs and arms.  Plaintiff underwent EMG

17  and nerve conduction study on August 13, 2014.  Results are

18  reported at pages 47 and 48 of the administrative transcript.

19  The testing revealed, evaluation of her right sural

20  antisensory nerve showed no response in the calf, all

21  remaining nerves were within normal limits.  The impression

22  was listed as abnormal study.  There is electrophysiologic

23  evidence for a peripheral neuropathy as can be seen with

24  toxic, metabolic, infectious, or inflammatory neuropathies.

25  Clinical correlation is advised.  There is also magnetic

1    resonance imaging testing of plaintiff's lumbar spine in

2    December 2013.  That is reported at page 470 of the

3    administrative transcript.  The results showed moderate disk

4    dessication at L5-S1 and moderate central protrusion with

5    slight loss of disk height, mild-moderate central stenosis at

6    L4-L5.  The plaintiff testified that her conditions, physical

7    conditions cause her to fall frequently, to suffer from

8    burning feet.  A cane was prescribed for her on November 28,

9    2017 by Nurse Practitioner Donna Sergio, that appears at 523

10   of the administrative transcript.  Plaintiff testified that

11   she uses it for balance.

12          Mentally plaintiff suffers from bipolar disorder,

13   poly-substance abuse, anxiety disorder.  She testified that

14   she suffers from hallucinations, daily panic attacks, she

15   does have a history of suicide attempts.  She was apparently

16   psychologically hospitalized in 2006 and 2008 but there don't

17   appear to be any records of those hospitalizations in the

18   administrative transcript.  Plaintiff treated at Bassett

19   Health Care until September of 2016 where she saw Dr. Fatema

20   Islam, Dr. Emily DeSantis, Dr. Gregory Cummings, Dr. Ashly

21   Joseph, and Family Nurse Practitioner Kelsey Olmstead.  Since

22   October of 2016 she has treated at the Falcon Clinic,

23   including with Dr. Richard Chmielewski and Nurse Practitioner

24   Donna Sergio, who has since apparently left that practice.

25   There she was treated primarily for her substance abuse with

1    Suboxone and Vivitrol or naltrexone.  Plaintiff has also

2    treated with Dr. Islam Hassan, a neurologist, as well as

3    Dr. Jayaraju Raju, psychiatrist.

4             Plaintiff has been prescribed Ambien for sleep,

5    Flexeril, lithium, Risperdal, Topamax, Xanax, Wellbutrin, and

6    Klonopin.  She also was on Ativan and Valium but those were

7    discontinued because of their addictive features.  She was

8    also on Depakote, Prozac, and Effexor and briefly on

9    gabapentin, which she reported made her feel dizzy.

10            Plaintiff has a fairly wide range of activities of

11   daily living.  She is able to shower, dress, prepare simple

12   meals, clean, do laundry.  She does not shop.  She does

13   engage in child care.  She watches television, washes dishes.

14   She testified that her boyfriend shopped for her.  She has no

15   hobbies and does not socialize.  Plaintiff smokes

16   approximately five cigarettes per day and also smokes

17   marijuana.

18            Plaintiff has a history of drug abuse and opiate

19   addiction.  She did serve one year of jail time for receipt

20   of stolen property, and there's some indication in the record

21   that she may also have received a conviction for driving

22   while intoxicated.

23            Procedurally, plaintiff had two prior applications

24   for Title II and Title XVI benefits denied.  One on May 3,

25   2013 and one on March 16, 2015.  Those appear at Exhibits 3A

and 4A of the administrative transcript.  She later applied

again for Title XVI benefits on September 29, 2016, alleging

an onset date of September 26, 2016.  At page 277, she

claimed disability based on neuropathy, bipolar disorder, and

anxiety.  She later expanded that by reporting difficulties

in lifting, sitting, standing, walking, squatting, bending,

kneeling, climbing stairs, remembering, completing tasks,

concentrating, understanding, following instructions, and

getting along with others.  That is reported at page 26 of

the administrative transcript citing Exhibit 4E.

The application was the subject of a hearing

conducted on July 12, 2018 by Administrative Law Judge Yvette

N. Diamond.  ALJ Diamond issued a decision on August 23,

2018, finding that plaintiff was not disabled at the relevant

times and therefore ineligible for the benefits sought.

Social Security Administration Appeals Council denied review

of that decision, or specifically, plaintiff's request for

review on June 20, 2019, making the administrative law

judge's decision a final determination of the agency.  This

action was commenced on August 22nd, 2019, and is timely.

In her decision, Administrative Law Judge Diamond

applied the familiar five-step sequential test for

determining disability.

At step one, she found that plaintiff had not

engaged in substantial gainful activity since September 29,

1    2016.

2            At step two, ALJ Diamond concluded that plaintiff

3    does suffer from severe impairments imposing more than

4    minimal limitations on her ability to perform work functions,

5    including obesity, neuropathy, degenerative disk disease of

6    the lumbar spine, bipolar disorder, poly-substance abuse, and

7    anxiety disorder.

8            At step three, ALJ Diamond concluded that

9    plaintiff's conditions do not meet or medically equal any of

10   the listed presumptively disabling conditions set forth in

11   the Commissioner's regulations, specifically considering

12   Listings 1.02, 1.04, 11.14, 12.04, and 12.06.  The

13   administrative law judge also considered plaintiff's obesity

14   in accordance with Social Security Ruling, or SSR, 02-1p.

15           The administrative law judge next concluded that

16   plaintiff retains the residual functional capacity, or RFC,

17   to lift and to perform light work with both physical and/or

18   exertional and nonexertional limitations beyond full range of

19   light work.  At page 25 to 26, and we'll come back to the

20   specifics, there are actually two residual functional

21   capacity findings, one predating September 28, 2017, and the

22   other covering the period from November 28, 2017 to the date

23   of decision.  The only significant difference was the

24   required use of a cane for ambulation subsequent to

25   November 28, 2016.

1          Applying that residual functional capacity at step

2    four, ALJ Diamond concluded that plaintiff is unable to

3    perform her past relevant work which was characterized, with

4    the assistance of a vocational expert, as caseworker and CNA.

5          At step five, initially ALJ Diamond noted that if

6    plaintiff could perform a full range of light work, a finding

7    of no disability would be directed by Medical-Vocational

8    Guideline Rule 202.21, or the Grid rules, as we refer to

9    them.  Based on the testimony of a vocational expert who

10   responded to a hypothetical that tracked the residual

11   functional capacity finding, the administrative law judge

12   concluded that, notwithstanding her impairments and resulting

13   limitations, plaintiff is capable of performing work that is

14   available in the national economy including as a routing

15   clerk, an office helper, and a copier.

16          The court's function, as you know, is to determine

17   whether substantial evidence supports the resulting

18   determination and correct legal principles were applied by

19   the administrative law judge.  Substantial evidence standard

20   is deferential, it is as stringent or more stringent than the

21   clearly erroneous standard that we are familiar with as legal

22   practitioners.  Substantial evidence of course is defined as

23   such relevant evidence as a reasonable mind might accept as

24   adequate to support a conclusion.  The Second Circuit noted

25   the deferential nature of this standard in *Brault v. Social*

1    *Security Administration*, 683 F.3d 443 from 2012, and noted

2    that under the substantial evidence standard, once an

3    administrative law judge finds a fact, that fact can be

4    rejected only if a reasonable fact finder would have to

5    conclude otherwise.

6            The plaintiff in this case has raised three basic

7    contentions, some of which are interwoven.  First, she

8    challenges the weight accorded to medical opinions of record,

9    including two treating sources or what plaintiff alleges are

10   treating sources, Dr. Chmielewski and Dr. Raju, as well as

11   Licensed Therapist Pope who of course is not an acceptable

12   medical source but nonetheless whose opinion must be

13   considered.  The claim is that the failures to properly weigh

14   those opinions affects the step three determination as well

15   as the residual functional capacity finding.  The second

16   concerns the weight accorded to plaintiff's subjective

17   complaints concerning her symptomology, and the third is that

18   the step five determination is infected by the errors cited

19   at points one and two.

20           I note as a backdrop that it is plaintiff's burden

21   through step four to establish her work-related limitations

22   under *Poupore*, Second Circuit's decision, and that includes

23   at the RFC stage.  It is also her burden to show limitation

24   affects the ability to perform work functions.

25           First, one of the pivotal functions of the

1    administrative law judge is to determine the plaintiff's

2    residual functional capacity.  An RFC represents finding of

3    the range of tasks that the plaintiff's capable of performing

4    notwithstanding her impairments at issue.  An RFC is

5    determined, is formed by consideration of all relevant

6    medical and other evidence.  To properly ascertain a

7    claimant's RFC, an ALJ must assess plaintiff's exertional

8    capabilities such as her ability to sit, stand, walk, lift,

9    carry, push, and pull.  Nonexertional limitations or

10   impairments must also be considered, and of course any RFC

11   determination must be supported by substantial evidence.

12           Pivotal to the RFC determination in this case is

13   the weight given to plaintiff's treating sources.  I note

14   that since the claim in this case was filed prior to

15   March 27, 2017, the former regulations, which have since been

16   abrogated and replaced, concerning treating source opinions

17   apply.  Ordinarily the opinion under those regulations of a

18   treating physician regarding the nature and severity of an

19   impairment is entitled to considerable deference, provided

20   that it is supported by medically acceptable clinical and

21   laboratory diagnostic techniques and is not inconsistent with

22   other substantial evidence.  Such opinions are not

23   controlling, however, if they are contrary to other

24   substantial evidence in the record, including the opinions of

25   other medical experts.  Any conflicts of course must be

1    resolved by the Commissioner and the court is not permitted

2    to reweigh how those opinions, conflicting opinions are

3    weighed by the administrative law judge.

4           Significantly, if the administrative law judge does

5    not give controlling weight to a treating source's opinion,

6    she must apply several factors to determine what degree of

7    weight should be assigned to the opinion, including:  One,

8    the length of the treatment relationship and frequency of

9    examination; two, the nature and extent of a treatment

10   relationship; three, the degree to which the medical source

11   has supported his or her opinion; four, the degree of

12   consistency between the opinion and the record as a whole;

13   five, whether the opinion is given by a specialist; and six,

14   other evidence which may be brought to the attention of the

15   administrative law judge.

16          In this case, since we're dealing with a Title XVI

17   application, 20 C.F.R. Section 416.927 of the former

18   regulations apply, although it is virtually identical to 20

19   C.F.R. Section 404.1527 which is cited by the administrative

20   law judge who claims that her treatment of the treating

21   source opinions was conducted pursuant to that regulation.

22          Significantly, when a treating source's opinions

23   are repudiated, the ALJ must provide reasons for the

24   rejection.  In this case, the opinion given by Dr. Raju, who

25   undeniably is a treating source, appears at pages 524 to 530

1    of the administrative transcript.  It was an opinion authored

2    on July 17, 2018.  The first page of the opinion asks in

3    narrative form to address certain questions concerning

4    treatment and response and clinical findings, prognosis, and

5    so forth.  The second page asks the treating source to

6    identify signs and symptoms, which Dr. Raju has done.  On the

7    third page, page 526, Dr. Raju indicates plaintiff is unable

8    to meet competitive standards in the following areas:  Work

9    in coordination with or proximity to others without being

10   unduly distracted; accept instructions and respond

11   appropriately to criticism from supervisors; get along with

12   coworkers or peers without unduly distracting and/or

13   exhibiting behavioral extremes; respond appropriately to

14   changes in a routine work setting; and deal with normal work

15   stress.

16          Dr. Raju also opines that in the area of complete a

17   normal workday and workweek without interruptions from

18   psychologically-based symptoms, plaintiff has "no useful

19   ability to function."

20          The opinion also goes on in the next page to

21   indicate that plaintiff cannot meet competitive standards in

22   dealing with stress in semi-skilled and skilled work, cannot

23   meet competitive standards and interact appropriately with

24   the general public, maintain socially-appropriate behavior,

25   adhere to basic standards of neatness and cleanliness, travel

1    in an unfamiliar place and use public transportation.  On

2    page 528, it shows an extreme limitation in interacting with

3    others, adapting to the workplace, and managing oneself in

4    the workplace and marked limitations in concentrating,

5    persistence, and maintaining pace.

6            Finally, at page 529, Dr. Raju opines that

7    plaintiff would be absent more than four days per month and

8    off task 25 percent or more.  Obviously that would be -- if

9    those opinions were adopted, plaintiff would be found

10   disabled and would be unemployable and probably would be

11   bound to meet or equal Listings, at least the 12.04, 12.06

12   listings at step three.

13           The administrative law judge rejected Dr. Raju's

14   opinions at page 29 very succinctly as follows:  "I assign

15   limited weight to the opinions provided by treating

16   physicians."  The administrative law judge treated

17   Dr. Chmielewski as a treating physician and also Dr. Raju and

18   stated in the instant case those statements generally failed

19   to identify specific relevant clinical data in support of

20   relatively severe restrictions identified.  The opinion

21   contains literally no discussion of the *Burgess* factors and

22   I've read the decision as a whole, as I must.  I know that

23   the Second Circuit has said *in Estrella v. Berryhill*, 925

24   F.3d 90, 2019, that the failure to specifically address the

25   regulatory or *Burgess* factors is not fatal if, when reading

1   the decision as a whole, the court is confident that the

2   treating source rule has not been violated.  I am unconvinced

3   that that is the case here.  Rather than stating her opinion

4   as to why the treatment records of Dr. Raju do not support

5   his findings, she rejects them because the doctor did not

6   specifically cite the supporting treatment notes.  That

7   doesn't comport with my understanding of the treating source

8   rule.

9        The Commissioner has done a remarkable job in his

10  brief of going through an analysis of how the treatment

11  records and other data might not support Dr. Raju's opinions,

12  but that is post hoc rationalization, and what the court

13  needs to look to is whether or not the administrative law

14  judge made that analysis and in this case, she did not.  Her

15  analysis is woefully deficient.

16       And I do know that the check-box forms have been

17  regarded by the Second Circuit in other courts as somewhat

18  weak evidence, but Dr. Raju's opinion goes further and asks

19  for signs and symptoms and it asks for narrative concerning,

20  as I indicated, treatment and so forth.

21       The -- and I agree with the plaintiff, plaintiff's

22  counsel that this is a mental health case and in mental

23  health cases, there's not always supporting objective

24  evidence and very often an expert like Dr. Raju, who's a

25  psychiatrist, must rely on, to some degree, his assessment of

1    plaintiff's reports of her symptomology.  Unfortunately, had

2    Dr. Raju's opinion been accepted as a, given controlling

3    weight, it is likely that one or more of the listings would

4    have been found to have been met, but in any event, the

5    residual functional capacity would have been much more

6    limited than that that was established by the administrative

7    law judge.

8            I do note that Dr. Chmielewski, his opinions are

9    generally supportive of those of Dr. Raju.  He gave an

10   opinion on February 24, 2018 and at page 35 which was the --

11   page 4 of the report that otherwise appears at 545 to 548, he

12   opined also that plaintiff would be absent more than four

13   days per month and would be off task 20 percent which is,

14   according to the vocational expert, would make plaintiff

15   unemployable.  It is unclear whether Dr. Chmielewski is truly

16   a treating source.  The clinic that he oversees was treating

17   the plaintiff extensively but primarily for her drug

18   addiction.  I do note that the administrative law judge, as I

19   said before, treated him as a treating source but even if

20   he's not a treating source, his opinion should have been

21   considered, and it is consistent with the opinion of

22   Dr. Raju.  Plaintiff treated with the clinic 14 times between

23   October 24, 2016 and March 12, 2018, presumably

24   Dr. Chmielewski had those records available to him.

25           I also note that Dr. Santoro, the consultative

1    examiner whose report appears at 369 to 373, opined that

2    plaintiff had significant limitations maintaining a regular

3    schedule and it was not even modest to marked.  It is stated

4    marked limitations are noted in maintaining regular schedule,

5    totally consistent with Dr. Raju and Dr. Chmielewski.

6    Nowhere in the -- that I could find in the administrative law

7    judge's discussion of Dr. Santoro's opinion is her

8    explanation of why she rejected that particular limitation.

9             I know that plaintiff has also raised what used to

10   be called credibility, raised an issue concerning the

11   administrative law judge's consideration of plaintiff's

12   reported symptomology.  Those of course are subject to

13   scrutiny under SSR 16-3p, and the administrative law judge

14   must take into account under that provision and the

15   regulations and specifically 20 C.F.R. Section 416.929(a),

16   plaintiff's subjective complaints in rendering a five-step

17   disability analysis.  When examining the issue, however, an

18   ALJ is not required to blindly accept the subjective

19   testimony of a claimant.  Rather, the ALJ has the discretion

20   to weigh the credibility of a plaintiff's testimony in light

21   of other evidence in the record.  I agree with the plaintiff

22   that the recitation of plaintiff's claims is minimal and

23   there doesn't appear to be a significant reference to

24   plaintiff's limiting hearing testimony.  I also agree with

25   the Commissioner, that the plaintiff in this case has serious

1    credibility issues, and so I'm not, I'm not placing

2    reliance -- in vacating the decision, not placing reliance on

3    the subjective or credibility analysis.  I am, however,

4    relying on the failure of the administrative law judge to

5    properly weigh the opinions of Dr. Raju, Dr. Chmielewski, and

6    Dr. Santoro.

7            So in the end, I am unable to conclude that the

8    resulting determination is supported by substantial evidence.

9    I will grant judgment on the pleadings to the plaintiff,

10   vacating the Commissioner's determination and remanding for

11   further consideration the relevant evidence without a

12   directed finding of disability because I am unable to

13   conclude, notwithstanding the fact that this case has been --

14   that the application has been pending for four years, I am

15   unable to conclude that there is such persuasive proof of

16   disability that I should remand solely for calculation of

17   benefits so I will remand without a directed finding of

18   disability.

19           Again, thank you both for excellent presentations,

20   please stay safe.

21           MR. BENSON:  You do likewise, thank you very much,

22   Judge.

23           MS. ESTELLE:  Take care, everyone.

24                (Proceedings adjourned, 2:53 p.m.)

25

1                     CERTIFICATE OF OFFICIAL REPORTER

2

3

4            I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5       Official Realtime Court Reporter, in and for the

6       United States District Court for the Northern

7       District of New York, DO HEREBY CERTIFY that

8       pursuant to Section 753, Title 28, United States

9       Code, that the foregoing is a true and correct

10      transcript of the stenographically reported

11      proceedings held in the above-entitled matter and

12      that the transcript page format is in conformance

13      with the regulations of the Judicial Conference of

14      the United States.

15

16                            Dated this 10th day of September, 2020.

17

18

19                            /S/ JODI L. HIBBARD

20                            JODI L. HIBBARD, RPR, CRR, CSR
                              Official U.S. Court Reporter
21

22

23

24

25